## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| YAHOO! INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: _____ |
| v. | ) | |
| | ) | |
| NATIONAL FOOTBALL LEAGUE | ) | JURY TRIAL DEMANDED |
| PLAYERS ASSOCIATION, INC. and | ) | |
| NATIONAL FOOTBALL LEAGUE | ) | |
| PLAYERS INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

For its Complaint against the National Football League Players Association, Inc.,

and the National Football League Players Incorporated (collectively hereinafter "NFL

Players") Plaintiff Yahoo! Inc. (hereinafter "Yahoo") alleges as follows:

## INTRODUCTION

1.      Yahoo provides NFL fantasy football game services to participants

throughout the United States, including tens of thousands of participants in the State of

Minnesota.

2.      NFL Players has threatened Yahoo with litigation if Yahoo does not pay

royalties to NFL Players for the use of publicly available NFL player statistics, and

related information, in connection with Yahoo's NFL fantasy football game.

3.      Yahoo seeks a declaration that NFL Players may not seek to control the use of names, likenesses (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information of NFL players in connection with NFL fantasy games and may not continue to extract money from Yahoo for the use of this publicly available information.

## THE PARTIES

4.      Defendant Yahoo is a Delaware corporation and does business throughout the United States, including within the State of Minnesota.  It is headquartered and maintains a principal place of business at 701 First Avenue, Sunnyvale, California, 94089.

5.      Yahoo is one of the leading providers of fantasy sports services in the United States and currently offers a variety of fantasy sports games for different professional sports, including football, basketball, baseball, hockey, golf and auto racing.

6.      Yahoo operates its fantasy sports games at yahoo.com, including an NFL fantasy football game.  "Fantasy football" refers to a game in which participants simulate management responsibilities of the roster of an NFL team by, among other things, (1) scouting, drafting, and trading players on their teams; (2) adding and dropping players; and (3) otherwise manipulating the team's roster over the course of the season-long competition.  To facilitate the competition among the participants in a given fantasy football league, the standard fantasy football game utilizes the actual statistics generated by NFL players during the course of the regular season.

7.      On information and belief, Defendant National Football League Players Association, Inc., (hereinafter "NFL Players Association") is a Virginia non-profit corporation with a principal place of business in Washington, D.C.

8.      On information and belief, Defendant National Football League Players Incorporated (hereinafter "Players Inc.") is a Virginia corporation with a principal place of business in Washington, D.C.

9.      On information and belief, the NFL Players Association acts as the exclusive collective bargaining representative for active players in the National Football League, including players residing in the State of Minnesota, and players who play for the Minnesota Vikings, a National Football League franchise that plays its home games in the State of Minnesota.

10.     On information and belief, through a collective bargaining agreement with the NFL Players Association and separate "Group Licensing Agreements," individual NFL players, including players residing and working in Minnesota, assign their "Group Licensing Rights" to the NFL Players Association and its licensing affiliates.

11.     On information and belief, the NFL Players Association has contracted to obtain the right to license the use of the individual players' names, signatures, facsimile, voices, pictures, photographs, likenesses, and biographical information in connection with group licensing programs.

12.     On information and belief, the NFL Players Association has granted Players Inc. the exclusive worldwide right, license, and privilege of utilizing the Group Licensing Rights.

13.     On information and belief, in exchange for the right to use and sublicense the Group Licensing Rights, Players Inc. pays the NFL Players Association a percentage of the gross licensing revenues received.

14.     On information and belief, Players Inc.'s extensive contacts with Minnesota strongly relate to the process by which Players Inc. acquires its interest as exclusive licensee of the publicity rights from the individual NFL players and the subsequent licensing to third parties.

15.     On information and belief, Players Inc. occasionally participates in the execution of the Group Licensing Agreements by sending them to players who reside and/or play football in Minnesota and keeps executed copies for its files.

16.     On information and belief, the statistics tied to the names of the individual NFL players are generated in football games played in numerous football stadiums around the country, including at the Metrodome in Minneapolis, Minnesota.

17.     On information and belief, Players Inc. has previously licensed a Minnesota-based fantasy football provider for the right to use players' names and statistics and has used that same provider to "power" its own fantasy football game.

18.     On information and belief, since the beginning of 2006, Players Inc. has been a party to 187 agreements not covered by the Group Licensing Agreements with individual Minnesota Vikings players who have been singled out by licensees or sponsors to be highlighted on product packaging or in print ads and endorsements.

19.     On information and belief, a portion of the millions of dollars in licensing revenue that Players Inc. receives from providers of fantasy football is paid directly by Players Inc. to football players in Minnesota.

20.     On information and belief, Players Inc. licenses numerous third parties to sell products and services (for example, jerseys, video games, and fantasy football games) throughout the United States, including Minnesota, and that all of these products and services bear, at Players Inc.'s insistence, the official logo of Players Inc.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, as well as, 15 U.S.C. §§ 1 *et seq*.  The Court further has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds the jurisdictional amount.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

23.     Yahoo, like other fantasy football game providers, tracks, compiles, and posts the publicly available statistics of NFL players to aid the participants in deciding which players to add, drop, trade, or start each week.

24.     Yahoo, like other fantasy football game providers, supplies its participants with player statistics, and other related factual information, about all players within the National Football League.

25.     In years prior to the NFL 2009/2010 regular season, Yahoo entered into licensing agreements with Players Inc., which authorized Yahoo to use, in connection with its fantasy football games, the "names, likenesses (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information" of individual NFL players.

26.     The last of these licensing agreements involving Yahoo expired on March 1, 2009.

27.     Yahoo need not be authorized by Players Inc. to use the publicly available names, likenesses (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information (including but not limited to player statistics) of individual NFL players in connection with its fantasy football game.

28.     Prior to entry into the now expired license agreement referred to in paragraph 26, Players Inc. threatened to sue Yahoo if Yahoo proceeded to use the names, likenesses (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information (including but not limited to players' statistics) of individual NFL players without the authorization of Players Inc.  During the term of the now expired license and more recently, Players Inc. argued in connection with at least one other fantasy football game provider that a license was required in order to use information of this type in connection with a fantasy football game, and that use of such information without a license would violate rights of publicity

29.     On May 21, 2009, Yahoo spoke with Players Inc. concerning its position in light of a recent decision in *CBS Interactive, Inc. v. Nat. Football League Players Inc.*,

0:08-cv-0597-ADM-SRN (D.Minn.) ("CBSI case").  In the CBSI case, the court held that the provider of a fantasy football game did not require a license from Players Inc. in order to operate a game that used player names, statistics, images and other information. Players Inc. had argued, both in the CBSI case, and to Yahoo prior to entry into the expired license, that a license from Players Inc. was required for the use of such rights.

30.     On May 26, 2009, Yahoo spoke with Players Inc. again and requested written confirmation whether it still takes the position that Yahoo requires a license to provide its fantasy football game.  Players Inc. declined to do so.

31.     On May 28, 2009, Players Inc. and NFL Players Association filed a notice of appeal in the CBSI case, indicating that they maintain their position that they control the rights to publicity in names, statistics and other information at issue in that case.  This position is directly contrary to Yahoo's position in this case that Players Inc. and NFL Players Association do not control such rights and cannot require a license for the use of such rights in a fantasy football game.

32.     On May 29, 2009, Yahoo wrote to Players Inc., noting that the notice of appeal had been filed and that Yahoo had not received written confirmation that Players Inc. will not require a license.  Yahoo requested that, by Monday, June 1, Players provide a simple representation that it will not sue Yahoo if it operates a fantasy football game that is consistent with its game from the 2008-2009 season.  Later that day, Players Inc.'s representative indicated that he would not provide a written confirmation on June 1 and suggested that the parties speak later that week.

## COUNT I

## DECLARATORY JUDGMENT THAT YAHOO DOES NOT VIOLATE ANY RIGHT OF PUBLICITY OWNED OR CONTROLLED BY NFL PLAYERS

33.     Yahoo realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

34.     Yahoo brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of Yahoo and NFL Players with respect to any alleged right of publicity owned or controlled by NFL Players.

35.     Yahoo's actions in operating a sports fantasy league business do not violate any right of publicity allegedly owned or controlled by NFL Players.

## COUNT II

## DECLARATORY JUDGMENT THAT A RIGHT OF PUBLICITY INTERPRETED BROADLY ENOUGH TO ENCOMPASS YAHOO'S ACTIONS IS SUPERSEDED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

36.     Yahoo realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

37.     Yahoo brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of Yahoo and NFL Players with respect to common law and statutory rights of publicity recognized within the United States.

38.     To the extent that a right of publicity recognized within the United States is violated or infringed by Yahoo's operation of a sports fantasy games business, the First Amendment to the U.S. Constitution supersedes the right of publicity.

## COUNT III

### DECLARATORY JUDGMENT THAT A RIGHT OF PUBLICITY INTERPRETED BROADLY ENOUGH TO ENCOMPASS YAHOO'S ACTIONS ARE PREEMPTED BY FEDERAL COPYRIGHT LAW

39.     Yahoo realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

40.     Yahoo brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of Yahoo and NFL Players with respect to common law and statutory trademark rights and rights of publicity recognized within the United States.

41.     To the extent that a right of publicity recognized within the United States is violated or infringed by Yahoo's operation of a sports fantasy games business, federal Copyright Law, which dedicates information used in a fantasy sports games business to the public, preempts the right of publicity.

## PRAYER FOR RELIEF

WHEREFORE, Yahoo respectfully requests the Court to enter judgment:

A.     Declaring that Yahoo's actions in operating a sports fantasy league business do not violate any right of publicity allegedly owned or controlled by NFL Players;

B.      Declaring that, to the extent that a right of publicity recognized within the United States is violated or infringed by Yahoo's operation of a sports fantasy games business, the First Amendment to the United States Constitution supersedes the right of publicity;

C.      Declaring that, to the extent that a right of publicity recognized within the United States is violated or infringed by Yahoo's operation of a sports fantasy games business, federal Copyright Law, which dedicates information used in a fantasy sports games business to the public, preempts the trademark right or right of publicity;

D       Enjoining NFL Players, their agents, servants, employees, attorneys, and affiliates, and those persons or entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from interfering with Yahoo's business related to fantasy sports, either directly through action against Yahoo or indirectly through actions against businesses who contract with Yahoo for fantasy sports products or services, or from threatening litigation or otherwise making statements that Yahoo and/or Yahoo's customers have violated, infringed or are violating or infringing any rights of NFL Players;

G.      Awarding Yahoo its reasonable costs and expenses, including attorneys' fees, incurred;

H.      Awarding Yahoo all pre and post judgment interest allowed by law; and

I.      Awarding Yahoo any other relief that this Court deems just and proper.

10

Dated:  June 1, 2009                    FREDRIKSON & BYRON, P.A.


                                      s/ S. Jamal Faleel
                                        Leo G. Stern #105302
                                        S. Jamal Faleel #320626
                                        200 South Sixth Street, Suite 4000
                                        Minneapolis, MN 55402-1425
                                        Telephone:  (612) 492-7000
                                        Facsimile:  (612)  492-7077
                                        lstern@fredlaw.com
                                        jfaleel@fredlaw.com


                                        *Attorneys for Plaintiff Yahoo! Inc.*

OF COUNSEL

David S. Fleming
Howard S. Michael
Joshua S. Frick
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Tel:  (312) 321-4200
Fax:  (312) 321-4299


4568786_1.DOC

11